**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JAMES G. PATTERSON**

**Plaintiff,**

**vs.** **CASE NO. 1:07CV129-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

**Defendant.**

**_____________________________/**

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for period of disability and disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## A. PROCEDURAL HISTORY

Plaintiff filed applications for period of disability and DIB on June 17, 2003, alleging a disability onset date of January 30, 2001, because of chronic back and neck pain (R77-82). Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 13, 2006 (R350-399), and entered an

unfavorable decision on October 4, 2006 (R11-21). The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B. FINDINGS OF THE ALJ

The ALJ found that Plaintiff could not perform his past relevant work, but found him "not disabled" because he could have performed light work activities that exist in significant numbers in the national economy, which was established with the help of a vocational expert (R15-21). The ALJ rejected Dr. May Montrichard's treating physician opinion because the checklist-type form was unsupported by Dr. Montrichard's objective medical evaluations (R18-19). The ALJ rejected Dr. Greenberg's physician opinion because he was not Plaintiff's treating physician and because the checklist-type form was unsubstantiated by medical evidence or explanations (R19).

## C. ISSUES PRESENTED

Plaintiff argues that the ALJ committed error by rejecting Plaintiff's treating physician's opinion. Plaintiff also argues that the ALJ failed to properly assess Plaintiff's credibility because the ALJ did not articulate explicit and adequate reasons based on substantial evidence for discrediting Plaintiff's pain testimony. Finally, Plaintiff argues that the ALJ committed error by not asking the vocational expert hypothetical questions that include Plaintiff's non-exertional impairments (i.e. his chronic pain).

The Commissioner responds that the ALJ properly rejected Dr. Montrichard's opinion. The Commissioner notes that the ALJ found that Dr. Montrichard's treatment notes and objective medical findings contradicted the Clinical Assessment of Pain form she completed. The ALJ noted that Dr. Montrichard's clinical notes indicated

conservative treatments and that she gave no explanations to support her checkmark-type responses to the Clinical Assessment of Pain form.

The Commissioner further responds that the ALJ properly assessed Plaintiff's credibility and based all findings on substantial evidence in the record. The ALJ found that Plaintiff's daily activities, his ability to raise two small children, and his investment accomplishments were inconsistent with a disabling degree of pain (R17). The ALJ recognized that the evidence indicated conservative treatment and improving health (R17-18).

Finally, the Commissioner responds that the ALJ properly found that Plaintiff could perform work that existed in the national economy. The ALJ relied on a vocational expert's responses to hypotheticals and, according to the Commissioner, properly excluded questions regarding non-severe impairments.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D. STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397,

1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To

qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within

the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

In July 1999, Plaintiff received pain medication and lifting restrictions in response to his complaints of back (R176), neck, and shoulder pain (R192). In August 1999, Plaintiff underwent two nerve root block procedures that relieved some of his neck and shoulder pain (R188-189). In October 1999, Plaintiff underwent a cervical discectomy and fusion operation (R159-169) that caused post-operative pain, which was treated with narcotic medication (R184). In November 1999, Plaintiff reported no right shoulder pain (R183).

In January 2000, Plaintiff reported no pain in his arms and x-rays were unremarkable (R181-182). In May 2000, Plaintiff reported a return of shoulder pain and intermittent arm pain (R182). No medical records exist until November 2001 when a treadmill stress test and EKG for complaints of chest pain indicated normal functioning (R154).

From February 2002 until January 2003, Plaintiff underwent mental health treatment and reported feeling better at group sessions (R197-237). In April 2003, Plaintiff first met with Dr. Montrichard to help manage neck and back pain (R241). Through July 2003, Dr. Montrichard prescribed and continued to re-fill Plaintiff's pain

medications in response to her medical assessment of chronic pain syndrome (R254-259).

In September 2003, Dr. Montrichard completed a questionnaire for the State Disability Determination Services (DDS) and indicated that Plaintiff had decreased grip strength in the right hand but needed no assistive devices, and that Plaintiff could squat, walk on his toes and sometimes on his heels (R261-263). Also in September 2003, Dr. Andres Nazario examined Plaintiff at the request of the State DDS (R264-267). Dr. Nazario diagnosed Plaintiff with mood disorder due to chronic pain and noted that medication controlled Plaintiff's mental condition (R267).

Between October 2003 and March 2004, Dr. Montrichard treated Plaintiff for chronic pain syndrome as well as prostatism, spasms, and insomnia (R242-252). In April 2004, Dr. Montrichard responded to a questionnaire by indicating that Plaintiff had fine dexterity, decreased grip strength in the right hand, and significant stiffness and she noted that Plaintiff could squat, walk on toes and on heels (R291).

In May 2004, Dr. Robert Greenberg examined Plaintiff and noted that Plaintiff required no assistive devices, could walk on his heels and on his toes, could stoop, and had no complications from the cervical fusion (R293). Dr. Greenberg's impression was severe osteoarthritis, benign prostatic hypertrophy, and chronic anxiety and depression (R293).

Also in May 2004, Dr. Linda Abeles examined Plaintiff at the request of the State DDS and wrote that Plaintiff met the criteria for a Depressive Disorder (R295-297). Dr. Abeles opined that Plaintiff's psychological functioning would not preclude him from

obtaining or maintaining employment, but future workplace success would depend on Plaintiff's physical condition (R296-297).

In September and in October 2005, Dr. Montrichard and Dr. Greenberg, respectively, each completed a Clinical Assessment of Pain worksheet (R329-334). Both doctors noted that Plaintiff experienced "marked pain" that interfered with concentration, persistence, and pace, and would prevent him from completing tasks relating to the activities of daily living without frequent interruptions for pain relief (R332, 342-343). Dr. Montrichard indicated that Plaintiff had a "marked" limitation (R333) and Dr. Greenberg indicated that Plaintiff had a "mild" limitation (R344) in his ability to maintain attention and concentration for extended periods and to keep a regular schedule. Dr. Montrichard indicated that Plaintiff had an "extreme" limitation (R333) and Dr. Greenberg noted that Plaintiff had a "marked" limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from pain and to perform at a consistent pace without an unreasonable number and length of rest periods (R344).

Also in October 2005, Dr. Greenberg completed a Residual Functional Capacity (RFC) Evaluation (R346-349). Dr. Greenberg indicated that Plaintiff could sit/stand and work for up to 30 minutes at one time for a total of 1-2 hours per day, 5 days a week (R346-347). Dr. Greenberg noted that, assuming Plaintiff could sit/stand at will while working, Plaintiff could work a total of 4-5 hours per day, 5 days a week (R347). He also noted that Plaintiff could lift 1-5 pounds frequently and occasionally (R348).

The ALJ found that Plaintiff had the RFC to perform light work activities (R16). The ALJ found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, sit and/or walk 6 hours in an 8-hour workday; balance, stoop, kneel, crouch and/or crawl occasionally; but, the ALJ found that Plaintiff cannot climb stairs and should avoid frequent overhead reaching (R16).

**F. SUMMARY OF THE ADMINISTRATIVE HEARING**

At the hearing, Plaintiff testified that he was 48 years old with a college education (R354-355). Plaintiff testified that he worked as a real estate salesperson since 1988 (R367) and was considered an independent contractor by Bosshardt Realty (R356-359). Plaintiff testified that chronic and acute pain in his neck, shoulder and upper-back forces him to lay down 14 or more hours per day and restricts him from sitting or standing for more than one hour at a time (R360).

Plaintiff testified that he frequently reads and watches television but cannot live the athletic, active lifestyle he once led (R363-364). Plaintiff does not help with yardwork, vacuuming, laundry, or cleaning, but Plaintiff dresses himself, takes care of his personal hygiene, microwaves and boils food (R366), drives 50-75 miles per week (R362), and does his own grocery shopping (R369).

Mr. David Pigue, a vocational expert, testified at the October 24, 2005 hearing, but Mr. Pigue revealed that he knew Plaintiff from their college days at the University of Florida (R370-371). Mr. Pigue's transferable skills analysis was admitted as evidence,

but the ALJ excused the remainder of his testimony to avoid any appearance of bias (R371).

Mr. Richard Hickey, a vocational expert, testified at a supplemental hearing held on February 13, 2006 (R376). The ALJ told Mr. Hickey to assume an individual with Plaintiff's age, education, and past work experience who could lift and carry 10 pounds frequently and 20 pounds occasionally, sit a total of six hours in an eight-hour workday, stand and/or walk a total of six hours, occasionally balance, stoop, crouch, kneel, and crawl, should avoid frequent overhead reaching, and should avoid hazards in the workplace (R383). Mr. Hickey testified that this hypothetical individual could perform Plaintiff's previous work (R383).

Then, the ALJ told Mr. Hickey to assume the same individual "except at the sedentary level" (R383). Mr. Hickey testified that this second hypothetical individual could also perform Plaintiff's previous work (R383). Mr. Hickey also testified that numerous unskilled or low, semi-skilled positions involved work capable of being performed by Plaintiff, including appointment clerk, telephone work, communication or switchboard operator, and order clerk (R393-394). Mr. Hickey elaborated that thousands of these jobs could be found throughout Florida and across the nation (R393-394).

## G. DISCUSSION

a) Treating physician's opinion

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The court concludes that the ALJ offered sufficient good cause for rejecting Plaintiff's treating physician's opinions. The ALJ acknowledged that the medical evidence reflected Plaintiff's osteoarthritis, degenerative disk disease and chronic back and neck pain (R15). However, the ALJ concluded that Plaintiff's impairments did not produce limitations of incapacitating proportions (R16-21). The ALJ based that determination on the objective medical findings of multiple physicians (State DDS consultants) and the vocational expert's testimony.

The ALJ noted that Dr. Montrichard's Clinical Assessment of Pain opinion contradicted her own medical records, which reflected conservative, non-aggressive treatments (R18). Additionally, Dr. Montrichard's residual functional assessment (as well as Dr. Greenberg's) was a conclusory check-list form that provided no substantiating medical evidence (R18). The ALJ further noted that Dr. Greenberg never treated Plaintiff, and his checkmark responses contradicted his evaluation notes from 2004 (R19). This court concludes that the ALJ discounted the treating physician's opinions for good cause.

b) Pain assessment

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to

produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

A plaintiff's daily activities may be considered in assessing pain. Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984). Also, a doctor's conservative treatment for a particular condition tends to negate a claim of disabling pain. Wolfe v. Chater, 86 f.3d 1072, 1078 (11th Cir. 1996).

Here, the ALJ properly articulated reasons for discrediting the Plaintiff's subjective complaints of pain. The ALJ based his decision on the vocational expert's testimony, Plaintiff's residual functional capacity, and objective medical evidence in the record (R16-19). The ALJ considered Plaintiff's underlying medical conditions as well as the accompanying objective medical evidence, and he concluded that the medical evidence did not confirm the severity of the alleged pain nor did the medical conditions rise to such a severe level of pain (R16-19). The ALJ further noted that Plaintiff's testimony regarding his lifestyle included activities, like extensive driving and successful investments, that were inconsistent with Plaintiff's allegations of incapacitating limitations (R17-18). The ALJ took special care not to minimize the medical impairments contained in the record, but noted that the objective medical evidence, Plaintiff's own testimony, and the mitigating effects of medication created good cause to reject Plaintiff's subjective complaints of pain (R19).

c) Vocational expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. §

404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. Phillips, 357 F.3d at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987).

In this case, the ALJ clearly articulated the differences between "chronic" and "severe" pain, and the ALJ properly excluded questions regarding non-severe impairments (R18,20). The ALJ found that Plaintiff could not perform his past relevant work (R19), but the vocational expert testified that Plaintiff was capable of adjusting to other work that existed in significant numbers in the national economy (R20-21). Thus, the ALJ asked appropriate hypothetical questions that elicited responses which supported his finding that Plaintiff could perform light work.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this ***4th*** u day of August, 2008.

***s/ A. KORNBLUM***
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**